# In the United States Court of Federal Claims

No. 10-54L
(Filed: June 2, 2015)

| | |
|---|---|
| THOMAS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Rails-to-Trails; Class Action; Final Approval of Settlement Agreement; Final Approval of Class Counsel Fees |

**ORDER GRANTING FINAL APPROVAL TO PARTIES' PROPOSED SETTLEMENT AND CLASS COUNSEL'S MOTION FOR FEES**

This is a class action Rails-to-Trails case concerning certain properties in Shelby County, Tennessee. Plaintiffs alleged that the government "took" their property interests without just compensation when it authorized the conversion of the rail corridor to a recreational trail. The parties have reached a settlement agreement for the appraised fair market value of their property and prejudgment interest. Pursuant to Rule 23(e) of the Rules of the United States Court of Federal Claims ("RCFC"), the parties submitted a joint motion seeking the court's approval of the settlement, ECF No. 141. Class counsel has also moved for the court's approval of attorneys' fees and proposed division of the common fund, ECF No. 140. For the reasons set forth below, the settlement is **APPROVED**, and class counsel's contingency fee arrangement is also **APPROVED**.

**I.     BACKGROUND**

  A. **Procedural History**

  On January 26, 2010, plaintiffs filed their complaint alleging that they owned property in Shelby County, Tennessee, through which CSX Transportation, Inc. and its predecessors ran a railroad right-of-way. Amended complaints were filed subsequently on May 5, 2010, ECF No. 13, and on March 17, 2011, ECF No. 31. Plaintiffs claimed that defendant the United States ("the government") affected a taking of their reversionary property interest in the railroad right-of-way when the government approved a conversion of the subject rail line to a recreational trail pursuant to the "railbanking" provisions of the National Trials System of 1983, 16 U.S.C. § 1247(d).

  Class certification was granted on October 29, 2010, ECF No. 3. The parties subsequently filed cross-motions for summary judgment on liability, ECF Nos. 53 & 74. On August 29, 2012, the court issued an opinion dismissing those plaintiffs who owned property adjacent to those portions of the rail corridor that the railroad owned in fee or who owned parcels that were not adjacent to the railroad corridor and granted plaintiff's cross-motion for summary judgment as to liability for the remaining plaintiffs. The parties then hired a joint appraiser who prepared an expert appraisal report on the fair market value of the property and served as the basis for settlement negotiations.

  The government and class counsel have come to an agreement regarding the general terms of a settlement. The settlement provides for just compensation and statutory attorneys' fees in connection with the alleged taking of plaintiffs' property for the creation of a trail. Instead of collecting the statutory fee, which will instead be paid to

the plaintiffs, class counsel has moved to treat the settlement as a common fund and seeks to recover a 35% contingency fee.  The government objects to the claim for a contingency fee.

      **B.**     **The Parties' Joint Motion for Preliminary Approval**

Under RCFC 23(e), the "claims, issues, or defense of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  In implementing RCFC 23(e), courts will typically first review the proposed settlement for a preliminary fairness evaluation and direct notice of the settlement to be provided to the class, and will then grant final approval of the proposed settlement following notice to the class and a fairness hearing.  Barnes v. United States, 89 Fed. Cl. 668, 670 (2009).

Pursuant to RCFC 23(e)(3), the parties submitted a joint motion detailing the terms of the settlement, and proposing a plan to give notice to class members and set a fairness hearing.  In addition, class counsel moved to treat the settlement as a common fund and recover 35% of the principal and interest as a contingency fee.  Under class counsel's proposal, the amount that the United States had agreed to pay under the URA would instead be distributed to the plaintiffs.  The government objected to counsel's claim for a contingency fee, arguing that class counsel should be limited to collecting the negotiated fees under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c) ("URA").  The parties each submitted a proposed notice to be sent to class members.

      **1.**     **Terms of the Proposed Settlement**

The parties' compromise settlement agreement, ECF No. 141-1, was filed with the court on February 23, 2015. The parties' proposed settlement agreement applies to all claims involved in this opt-in class action. In reaching the agreement, the parties conducted a joint appraisal of the fair market value of plaintiffs' property interest for the alleged taking. Under the settlement, the 79 plaintiffs (owning 81 tracts of land) would receive a total of **$5,097,501.55**, of which $3,269,725.80 is principal and $1,309,197.25 is interest. The settlement additionally includes $518,578.50 in attorneys' fees under the URA, which has been allocated between attorneys' fees of $490,936.89 and reimbursement for reasonable costs and expenses of $27,641.61. The government objected to counsel's claims for a contingency fee, arguing that class counsel should be limited to collecting the negotiated fees under the URA. The parties each submitted a proposed notice to be sent to class members.

**2.      Class Counsel's Motion for Approval of a Contingency Fee**

In their motion for attorneys' fees, ECF No. 140, class counsel requests an award of 35% of the common fund excluding statutory attorneys' fees in this case. This request is consistent with the contingency fee agreements between class counsel and the class representatives, as well as the provision regarding attorneys' fees from the court-approved Class Notice. An award of 35% of the common fund excluding statutory attorneys' fees amounts to $1,602,623.07, prior to adding any accrued interest. Under this approach, each class member's share of the $490,936.89 in URA attorneys' fees would be added back to each class member's recovery. Class counsel would retain

$27,641.61 for reasonable costs and expenses. The effect of this is that each class member would pay an effective contingency fee of 24% of their total recovery.

Class counsel argues that when the plaintiffs opted-in to this case and agreed to allow class counsel to represent them, they were on notice that class counsel intended to recover a percentage of the total recovery and each plaintiff opted-in to this lawsuit with an understanding of those terms. When each class member opted-in to the litigation, he or she was provided with a court-approved notice stating that, if plaintiffs prevailed or reached a settlement, class counsel would be paid a contingency fee of 35% of the total recovery or attorneys' fees pursuant to the URA, whichever amount was greater. Therefore, counsel argues, notwithstanding the fact that the plaintiffs did not all sign an express agreement to pay a contingency fee, they all entered the lawsuit with the understanding that class counsel could recover such a fee if they were successful. Class counsel notes that their contingency fee request is consistent with other Rails-to-Trails cases, which have routinely treated settlements of this nature as "common funds." Additionally, class counsel states that they have spent more than 1,800 hours over five years on this matter and have obtained a favorable result for their clients, and therefore the amount they are seeking is substantively reasonable.

The government has filed a response to class counsel's motion for fees, ECF No. 142, questioning class counsel's right to recover a contingency fee. The government argues that the court should not apply the common fund doctrine in this case because each individual plaintiff did not sign a retention agreement that expressly included a contingency fee. The government argues that, notwithstanding case law to the contrary,

the equitable reasoning underlying a court's award of a contingency fee—specifically, preventing unjust enrichment of class members who would benefit from the litigation without bearing any of its costs or risks—does not apply when each class member must agree to join the litigation at the outset.  Therefore, the government argues, the court should not grant a contingent fee and should limit class counsel to recovering the fees the government agreed to pay under the URA.[1]  In the alternative, the government has asked the court to perform a lodestar analysis to ensure that any contingent fee class counsel recovers is reasonable.  Id.

After considering the record and relevant case law, the court found that the total amount that class counsel would recover as a contingency fee appeared to be reasonable and therefore granted preliminary approval of class counsel's motion for fees.

### C. Preliminary Approval and Fairness Hearing

On March 24, 2015, this court granted preliminary approval to the proposed settlement and scheduled a public fairness hearing.  See Order Granting Preliminary Approval of Settlement, ECF No. 144.  At the preliminary approval stage of the proceedings, the court needed only to consider whether the settlement had any obvious deficiencies.  See Barnes, 89 Fed. Cl. at 670.  Upon review of the settlement agreement, the court did not find any collusive activity, preferential treatment, or other deficiencies in the proposed settlement.  As for the contingency fee arrangement, the court found that

---

[1] The government has also taken this position in a case pending before the Federal Circuit.  See Haggart v. United States, No. 14-5106 (Fed. Cir.).

plaintiffs had been put on notice that counsel would seek to recover such a fee when they opted-in to this lawsuit. The court also noted that the Court of Federal Claims has routinely applied the common fund doctrine and allowed counsel to recover a contingency fee in Rails-to-Trails cases and other opt-in class actions. In addition, based on the complexity of this case and the number of hours worked, the court found that the total amount that counsel was seeking to recover was not unreasonable on its face. The court reserved ruling on a final determination of the reasonableness of the settlement and counsel's fee arrangement until after the fairness hearing so that it could take the plaintiffs' comments or objections, if any, into account.

The court ordered counsel to send a court-approved notice of the settlement to the plaintiffs. The notice asked each plaintiff to state whether they had any objection either to the terms of the settlement or to counsel's proposed contingency fee arrangement. On April 27, 2015, class counsel filed a notice of class members' responses to the class action settlement notice, ECF No. 146. On May 1, 2015, class counsel filed a supplemental notice of class members' responses to the class action settlement notice, ECF 147. In total, class counsel received responses to the class action settlement notice from 76 class members. All plaintiffs approved of the proposed settlement and distribution of fees. No plaintiff indicated that they wished to appear or address the court the fairness hearing.

On May 4, 2015, the court held a telephonic fairness hearing on the parties' joint motion for preliminary approval of the parties' proposed class action settlement and class counsel's motion for fees. Although all of the plaintiffs had agreed to the settlement and

7

fee arrangement, the defendant reiterated its objection to class counsel's proposed fee arrangement.

## II. DISCUSSION

### A. The Settlement Agreement

The court may approve a proposed settlement in a class action case "only after a hearing and on finding that it is fair, reasonable, and adequate." RCFC 23(e); see also Moore v. United States, 63 Fed. Cl. 781, 783 (2005). The court has the discretion to accept or reject a proposed settlement, but it may not alter the proposed settlement, nor may it decide the merits of the case or resolve unsettled legal questions. Adams v. United States, 107 Fed. Cl. 74, 75-76 (2012) (citing Evans v. Jeff D., 475 U.S. 717, 726-27 (1986); Nat'l Treasury Emps. Union v. United States, 54 Fed. Cl. 791, 797 (2002)).

There is no definitive list of factors that the court must apply in considering a class action settlement. Raulerson v. United States, 108 Fed. Cl. 675, 677 (2013). However, in determining whether a settlement agreement is "fair, reasonable, and adequate," courts have found the following factors instructive: (1) the relative strengths of plaintiffs' case compared to the proposed settlement; (2) the recommendation of the counsel for the class regarding the proposed settlement, taking into account the adequacy of class counsel's representation of the class; (3) the reaction of the class members to the proposed settlement, taking into account the adequacy of notice to the class members of the settlement terms; (4) the fairness of the settlement to the entire class; (5) the fairness of the provision for attorneys' fees; and (6) the ability of the defendants to withstand a

greater judgment, taking into account whether the defendant is a governmental actor or private entity. <u>Sabo v. United States</u>, 102 Fed. Cl. 619, 627 (2011) (citation omitted).

In this case, after the plaintiffs' motion for summary judgment on liability, the parties engaged the services of an expert real estate appraiser, J. Walter Allen, MAI, FRICS ("Mr. Allen"). <u>See</u> Joint Status Report, ECF No. 107. The parties agreed to use an appraisal prepared by Mr. Allen that was used by CSX and Shelby County to negotiate the agreed price to transfer the right-of-way. Mr. Allen performed what is commonly known as an across-the-fence appraisal ("Allen appraisal"). Using this method, an appraiser determines the value of the land within the corridor based on the value of the adjacent land. In the Allen appraisal, all properties adjacent to the corridor were included in one of fifteen groups of like kind of properties based on their location along the corridor, zoning, and highest and best use. A set of comparable sales was compiled and analyzed for each group of properties. Mr. Allen determined the across-the-fence value for each of the subject properties based on the group to which it was assigned. Because his prior report valued the land approximately two years later than the date of the taking, Mr. Allen was requested to provide a report that applied an appropriate adjustment to his previous conclusions. The agreement does not single out or reward one class member over another. As such, the court finds that the process was both fair to the individual class members and to the class as a whole.

In addition, despite ample opportunity, no plaintiff had raised any objections to the terms of the settlement. Class counsel reviewed the terms of the proposed class action settlement with the class representatives who the court designated to protect the interest

of the class, in accordance with RCFC 23(a)(4). The class representatives determined that the proposed settlement is in the best interests of the class. See Joint Mot. at 8. During the settlement process, the plaintiffs were given an opportunity to meet with counsel to address any questions or concerns they may have had. Plaintiffs were also given the opportunity to submit written objections or participate in a telephonic fairness hearing, but each plaintiff declined that opportunity.

The court further finds that the statutory attorneys' fees and costs agreed to under the settlement are reasonable. The URA provides that plaintiffs may be reimbursed for "reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred" during the litigation, as approved by the Attorney General. 42 U.S.C. § 4654(c). In evaluating such awards, the Attorney General's opinion is entitled to deference, and the court does not conduct the same in-depth analysis as it would if it were rendering the award. Moore, 63 Fed. Cl. at 785 n.6. In this case, the court finds that the amount of attorneys' fees and costs to be paid to the plaintiffs are reasonable.

For all of these reasons, the court holds that the parties' proposed settlement agreement is fair, reasonable, and adequate and warrants approval.

### B.     The Contingency Fee Arrangement

For the reasons stated below, the court finds that class counsel's proposed contingency fee arrangement in this case is both lawful and reasonable. Therefore, the court will approve class counsel's motion for fees.

### 1.     Class Counsel's Proposed Contingency Fee Agreement Is Lawful.

After considering the record and relevant case law, the court finds that the contingency fee arrangement class counsel has proposed is lawful.  Under RCFC 23(h), the court may award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Haggart v. United States, 116 Fed. Cl. 131, 143 (2014) (quoting RCFC 23(h)).  In this case, class counsel has asked this court to find that a common fund exists, and to allow them to recover a percentage of that fund.  "Recovery under the common fund doctrine stems from the equitable power of a court to create the obligation for attorney fees against benefits some received as a result of the advocacy of another."  Knight v. United States, 982 F.2d 1573, 1580 (Fed. Cir. 1993).

Class counsel argues that the fact that URA fees are available does not preclude them from recovering a contingency fee when, as in this case, the plaintiffs entered this litigation understanding that class counsel would recover a contingency fee and have no objection to the fee.  As class counsel notes, when the plaintiffs opted-in to this case and agreed to allow class counsel to represent them, they were on notice that class counsel intended to recover a percentage of the total recovery and each plaintiff opted-in to this lawsuit with an understanding of those terms.  When each class member opted-in to the litigation, he or she was provided with a court-approved notice stating that, if plaintiffs prevailed or reached a settlement, class counsel would recover either a contingency fee of 35% of the total recovery or attorneys' fees pursuant to the URA, whichever amount was greater.  Therefore, class counsel argues, notwithstanding the fact that the plaintiffs did

not all sign an express retention agreement, they all entered the lawsuit with the understanding that class counsel could recover such a fee if they were successful. Counsel further argues that they are actually asking for a smaller contingency fee than plaintiffs agreed to pay, because they are only requesting 35% of principal and interest rather than 35% of the total recovery. Class counsel notes that their contingency fee request is consistent with other Rails-to-Trails cases, which have routinely treated settlements of this nature as "common funds," including recent cases approving fees of 34% including URA attorneys' fees and 40% excluding URA attorneys' fees.

The government argues that no common fund was created in this case, and therefore the common fund doctrine should not apply. The government argues that, notwithstanding case law to the contrary, the equitable reasoning underlying a court's award of a contingency fee—specifically, preventing unjust enrichment of class members who would benefit from the litigation without bearing any of its costs or risks—does not apply when each class member must agree to join the litigation at the outset. Therefore, the government argues, the court should not grant a contingent fee and should limit class counsel to recovering the fees that the government agreed to pay under the URA. In the alternative, the government has asked the court to perform a lodestar analysis to ensure that any contingent fee class counsel recovers is reasonable.

The court agrees with class counsel. The Supreme Court has found that an attorney may recover under a contingency fee agreement even if the defendant is statutorily obligated to pay attorneys' fees. See Gisbrecht v. Barnhart, 535 U.S. 789, 806 (2002); Venegas v. Mitchell, 495 U.S. 82, 87-88 (1990). Courts in similar cases have

awarded contingency fees to class counsel notwithstanding the availability of statutory fees, so long as the total fee is reasonable.  See Moore, 63 Fed. Cl. at 785-86 ("A request for some percentage of the total award is not inappropriate, despite the fact that the parties have settled the matter of statutory fees and that the resulting fee would be higher than that received under the fee-shifting statute." (citing Staton v. Boeing Co., 327 F.3d 938, 966 (9th Cir. 2003))).  In this case, every plaintiff has signed two documents, one at the outset of the litigation agreeing to participate in the litigation and one at the end stating that they have no objection to the contingency arrangement, indicating that they approve of the plan to pay a percentage of their recovery in attorneys' fees notwithstanding the fact that statutory fees are available.  As the government acknowledges, cases in the Court of Federal Claims have routinely applied the common fund doctrine and allowed counsel to recover a contingency fee in Rails-to-Trails cases and other opt-in class actions when the plaintiffs signed similar agreements.  See, e.g., Haggart, 116 Fed Cl. at 148-49; Raulerson, 108 Fed. Cl. at 678-79; Voth, 108 Fed. Cl. at 105.  Unless this court is given contrary instructions by the circuit, there is no reason not to decide this case in alignment with the other Court of Federal Claims cases addressing this precise issue.

### 2. The Contingency Fee Is Substantively Reasonable.

Class counsel argues that the percentage of the common fund they seek to recover (35% of principle and interest) is within the acceptable range for this type of case, and

that the total amount of the fees they seek to recover is substantively reasonable. The court agrees with class counsel.[2]

Counsel's request for a 35% fee is within the acceptable range for a contingency fee in a rails-to-trail case. See, e.g., Voth, 108 Fed. Cl. at 106 (approving a 40% contingency fee); Bishop v. United States, No. 10-594L, 2013 WL 4505991, at *5 (Fed. Cl. Aug. 19, 2013) (approving 33% fee); Moore, 63 Fed. Cl. at 787 (noting that though "40% is within the acceptable range, awards more typically range between 20% to 30% of the total fund, with 50% being the upper limit." (citations omitted)).

Further, the court finds that the total amount that class counsel would recover as a contingency fee is reasonable taking into account the quality of counsel, the fee that likely would have been negotiated between private parties in similar cases, the complexity and duration of litigation, and the percentage applied in other class actions.

---

[2] Unlike fee shifting statutes, which may require the application of a particular lodestar method to determine the amount of attorneys' fees, the court is not "bound by any one methodology," but must take into consideration the individual circumstances of the case to ensure that the overall rate is reasonable. Moore, 63 Fed. Cl. at 786 (citing Camden I Condo. Ass'n v. Dunkle, 946 F.2d 768, 774 (11th Cir. 1991)). Factors to consider may include

 (1) The quality of counsel;
 (2) The complexity and duration of litigation;
 (3) The risk of non-recovery;
 (4) The fee that likely would have been negotiated between private parties in similar cases;
 (5) Any class member's objections to the settlement terms or fees requested by class counsel;
 (6) The percentage applied in other class actions; and
 (7) The size of the award.

Haggart, 116 Fed. Cl. at 143; see also Moore, 63 Fed. Cl. at 787 (citing Manual for Complex Litigation (Fourth) § 14.121, p. 192.)). Therefore, the court disagrees with the government that a more involved lodestar determination is required in this case.

This case has been in litigation for six years.  Counsel has provided documentation of the hours logged during the various phases of this litigation, and attested that, in total, they have worked approximately 1,800 hours on this case as of the time that the settlement was finalized.  They have since performed additional work in order to secure preliminary and final approval of the settlement from this court.  Counsel has obtained a favorable result for their clients, both at the summary judgment stage and settlement negotiation stage of the litigation.

For all the reasons stated above, the court finds that a 35% contingency fee and a total award as set forth below is reasonable and should be approved.

### III.  CONCLUSION

For the foregoing reasons, the parties' proposed settlement agreement, including attorneys' fees and costs agreed to as authorized by the URA, is **APPROVED**.  Plaintiffs' contingency fee agreement is also **APPROVED**.  Accordingly, the clerk of the court shall enter final judgment in favor of plaintiffs in the principal amount of $3,269,725.80 plus pre-judgment interest from October 26, 2007, the date of the alleged taking, calculating the rate of interest using Moody's AAA bond rates and compound interest.  As of December 31, 2014, the interest is calculated at $1,309,197.25, and will continue to accrue until the plaintiffs are paid.  Judgment shall also include $490,936.89 as reimbursement for attorneys' fees under the URA.  In addition, the plaintiffs will be paid $27,641.61 as reimbursement for litigation costs.

**IT IS SO ORDERED.**

                                                             <u>s/Nancy B. Firestone</u>
                                                             NANCY B. FIRESTONE
                                                             Judge